[Department Two. — February 12, 1883.]

## JESSIE RICE, APPELLANT, v. JOHN H. McKUNE ET AL. RESPONDENTS.

SWAMP AND OVERFLOWED LANDS — PURCHASE — SURVEY — BOUNDARY. — Certain swamp and overflowed lands situated in township five north, range five east, Mount Diablo meridian, were purchased from the State prior to the completion of the government surveys. The lands were surveyed by the county surveyor under a statute of the State then in force. One of the lines described in the field notes commenced at the southwest corner of section one, and ran north eighty chains to the township line. A certificate of purchase was issued in accordance with this survey, and subsequently a patent was also issued in which reference was made both to the survey and field notes. At the time of the survey the section lines had not been run, but the township line referred to in the field notes had been run and established. When the section lines were run the southwest corner of section one was located considerably more than eighty chains south of the township line. The question was as to the northern boundary of the lands so purchased. *Held,* that the township line constituted the boundary.

APPEAL from a judgment of the Superior Court of the county of Sacramento, and from an order refusing a new trial.

The action was ejectment against a landlord and his tenant, and the judgment was in their favor. The facts are stated in the opinion of the court.

*S. Solon Holl,* for Appellant.

*Freeman & Bates,* for Respondents.

SHARPSTEIN, J.—The respondent, McKune, purchased of the State five hundred and sixty acres of swamp and overflowed land which had not then been surveyed by the United States, but of which he procured a survey to be made by the county surveyor of the county in which said land was situated according to the provisions of the statute then in force.

The controversy is as to the location of the northern boundary line of the tract sold by the State to the respondent. He claims that the land purchased by him is bounded on the north by the northern line of township five north of range five east. And he bases that claim upon the field notes of the survey by the county surveyor, of which the following is a copy:—

"Beginning at the southwest corner of section one; thence north eighty chains to the township line; thence east nine chains to Cosumnes River; in all, eighty chains; thence south on range line forty chains; thence south forty chains; thence west thirty-eight and fifty-one hundredths chains to Cosumnes River, in all sixty chains, to place of beginning."

When that survey was made the location of the southwest corner of section one had not been determined by a United States survey. But the township line referred to had been run. That line and the Cosumnes River constituted the only fixed objects referred to in said field notes. After the respondent had purchased the land it was surveyed by the United States, and according to that survey the southwest corner of said section one is considerably more than eighty chains south of said township line, and the strip of land lying between a line eighty chains north of the south line of said section, and said township line was subdivided into lots numbered one, two, three, four, which the State afterwards undertook to sell and convey to the appellant. So that the only question which we have to decide is whether these lots were included in the conveyance of the State to the respondent.

The certificate of purchase issued March 16, 1864, to the respondent, describes the land sold to him as follows:—

" Survey number six hundred and fifteen, Sacramento County, the north half, the southwest quarter, and the west half of the

southeast quarter of section one, township five north, range five east, Mount Diablo base meridian."

And in the patent issued to respondent January 24, 1872, the following description is given:—

"Said lands being situated in Sacramento County, and described as follows, to wit: Survey number six hundred and fifteen, swamp and overflowed land, Sacramento County, township number five north, range number five east, Mount Diablo meridian, section number one; the north half, the southwest quarter, and west half southeast quarter, section one, and more particularly described in the field notes of said survey as follows: The north half, the southwest quarter, and the west half of the southeast quarter of section one, township five north, range five east, Mount Diablo meridian, containing five hundred and sixty acres."

As before stated the respondent purchased before the United States survey was made, and before the lines of section one had been run; and at the time of such purchase there were no such legal subdivisions as half or quarter sections of said section in existence. But by reference to the field notes of the survey of the county surveyor we find a definite description of said land by metes and bounds, and the respondent purchased the land included in that survey. The county surveyor could not run the section lines, nor subdivide into half or quarter sections, but he could survey a tract of five hundred and sixty acres, which should be bounded on the north by a township line, and on the east by the Cosumnes River, and by the aid of those two fixed monuments and the courses and distances given, there is no difficulty in determining the proper boundaries of the land conveyed to the respondent. And we do not doubt that the north line of township five constitutes the northern boundary of said land.

We find no error in the rulings of the court upon the admissibility of evidence to the introduction of which the appellant objected.

Judgment and order affirmed.

Morrison, C. J., Myrick, J., and Thornton, J., concurred.

Hearing in bank denied.